# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **TEXTILE COMPUTER SYSTEMS,**<br><br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**BROADWAY NATIONAL BANK,**<br><br>　　　　**Defendant.** | **Civil Action No.: 6:21-cv-1050** |

### DEFENDANT BROADWAY NATIONAL BANK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

# **TABLE OF CONTENTS**

I. Textile's Incomplete Allegations and Shifting Definition of "Accused Instrumentality" Confirm that It Has No Plausible Infringement Allegations. .......................................................... 1

II. Textile Has Not Alleged that Broadway Puts the Alleged Invention Into Service. ............. 4

III. Textile Has Failed to Plausibly Allege Joint Infringement of the Asserted Method Claims Because Broadway Does Not "Direct and Control" Third Parties. ................................................ 5

IV. Textile Concedes that It Cannot Show Pre-Suit Knowledge of the Asserted Patents. ........ 7

V. There is No Plausible Allegation that Broadway "Instructs" Customers to Infringe. ......... 8

VI. Textile's Claims of Contributory Infringement Fail to Describe Any "Special" Features of Broadway's Alleged "System." ...................................................................................................... 9

VII. Textile's "Run-of-the-Mill" Willfulness Allegations Lack Any Exceptionality. .............. 10

VIII. No Amendment Should Be Permitted, and Textile is Not Entitled to Discovery............. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014).................................................................................................................. 8

*Aguirre v. Powerchute Sports, LLC*, No. SA-10-cv-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011)........................................................................................................................ 7

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc)......... 6

*BillJCo, LLC v. Apple, Inc.*, No. 6:21-CV-528-ADA, Dkt. 44 (W.D. Tex., Feb. 1, 2022) ............ 8

*Centillion Data Systems, LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011).... 4

*Georgetown Rail Equipment Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017)....................... 4

*Grecia v. McDonald's Corp.*, 724 F. App'x 942 (Fed. Cir. 2018).................................................. 5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)........................................................... 10

*Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320 (Fed. Cir. 2017)....................... 5

*IOENGINE, LLC v. PayPal Holdings, Inc.*, Case No. 18-cv-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) (Bryson, Cir. J., by designation)............................................................. 6, 7

*Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014) ............................................... 9

*Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, Case No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518 (C.D. Cal. Apr. 18, 2018)....................................................... 6

*Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1377 (Fed. Cir. 2017) ............................................. 6

Plaintiff Textile Computer Systems, Inc.'s ("Textile") Opposition confirms that its Complaint is wholly deficient and that Defendant Broadway National Bank's ("Broadway") Motion to Dismiss should be granted.

## I. Textile's Incomplete Allegations and Shifting Definition of "Accused Instrumentality" Confirm that It Has No Plausible Infringement Allegations.

Both Broadway's Motion and Textile's Opposition confirm that Textile has failed to plausibly plead its allegations, as it has failed to identify even the supposed "Accused Instrumentality" with necessary specificity. The Complaint offers the following definition:

> Broadway offers debit and/or credit cards, such as the Broadway Bank Visa Contactless Debit Card, that are used with an authentication system that authenticates the identity of a Broadway card holder in a request to pay a merchant for a transaction (the "Accused Instrumentality").

[*E.g.*, ECF 1 at ¶ 23]. Based upon Textile's definition, Broadway concluded that Textile accuses Broadway's alleged offering of "debit and/or credit cards" of infringement. Now, faced with the present Motion, Textile concedes that Broadway's offering of the cards does not infringe and, instead, attempts to redefine "Accused Instrumentality" to mean "the accused payment authorization system." [ECF 28 at 7]. Textile's attempted re-definition of "Accused Instrumentality" affirms Broadway's central argument: Textile has not adequately pled a cause of action and it "brings this action against the wrong actor." [ECF 20 at 1].

Textile's sole support for its allegations regarding operation of the supposed "payment authorization system" is a third-party U.S. Payments Forum document[1] – which is *not* a Broadway document and makes *no* reference to Broadway. [ECF 20 at 4-9]. Textile's theory as alleged in its Complaint is that the asserted claim elements are performed by "Token Service

---

[1]  Textile did not attempt to rebut, and therefore concedes, that there is no "association or affiliation between Broadway and the U.S. Payments Forum, and [that] Broadway is not a 'member' of the third-party U.S. Payments Forum." [ECF 20 at 5].

1

Providers," *not* Broadway. [*See id.*]. Now, Textile incorrectly argues that it plausibly alleges that the claim elements are supposedly "hosted directly by Broadway." [ECF 28 at 4-5]. But rather than demonstrate plausibility, Textile's argument undermines its allegations. The citations in Textile's Complaint to the U.S. Payments Forum document fail to support Textile's allegations (as does the document itself) and are inconsistent with Textile's argument that Broadway hosts any claim elements. [ECF 20 at 5]. The excerpts included in the Complaint (as well as the document itself) do not reference Broadway, and the only citation in Textile's Complaint identifying Broadway is a webpage referencing the admittedly non-infringing and not-accused debit and credit cards. [*E.g.*, ECF 1 at ¶ 23]. Indeed, that webpage merely provides: "Broadway Bank Visa® Debit Card[s are] digital wallet ready. … You [*i.e.*, the cardholder] can use this feature with Apple Pay®, Google Pay®, and Samsung Pay®." It does not speak to any hosting of alleged claim elements by Broadway; the allegations are not plausible.

Textile argues, in a footnote, that it provided "pages of factual allegations and citations to Broadway's website, … all of which describe how Broadway's use of the accused instrumentality meets each claim element." [ECF 28 at 4-5 n.1 (citing ECF 1 at ¶¶ 23-30; ¶¶ 49-57; ¶¶ 76-85; ¶¶ 101-109; and ¶¶ 125-133)]. Not so; there are not "pages" of material – instead, Textile merely duplicates a single citation to a single webpage. [*See* ECF 1 at ¶¶ 23, 49, 76, 101, 125]. Textile does not even rely upon that single webpage as allegedly describing the purported "payment authorization system."  Instead, Textile's description of how the purported "payment authorization system" allegedly operates comprises only either attorney argument or information from the third-party U.S. Payments Forum document. [*See id.*]. Indeed, as noted above, the Broadway webpage that Textile actually cites makes it clear that Broadway is not the host of any processing/authenticating services; the hosts would be Token Service Providers ("TSPs").

2

Broadway's webpage also establishes that a user would be the cardholder, not Broadway. [ECF 1 at ¶ 23 ("Broadway Bank Visa® Debit Card[s are] digital wallet ready. … ***You [cardholder] can use*** this feature with Apple Pay®, Google Pay®, and Samsung Pay®." (emphasis added))]. Textile does not plausibly allege any connection between any claimed element of the supposed "system" and Broadway.

Despite Textile's exclusive reliance upon the third-party U.S. Payments Forum document in describing the alleged operation of the purported "payment authorization system," (*see, e.g.*, ECF 1 at ¶¶ 23-30), Textile now reverses course, contending that it provided the document "only to illustrate exemplary implementations" (ECF 28 at 5). If Textile is not relying upon the U.S. Payments Forum document to identify the alleged infringement, then Textile has no support for its allegations of infringement (direct or otherwise) by Broadway.

Finally, Textile ignores the actual allegations in its Complaint based on the U.S. Payments Forum document, which do not identify Broadway, but instead identify TSPs such as Visa, Mastercard, American Express, and Discover as providing the payment processing systems that authenticate and authorize attempted payments. Instead, Textile now cites to a portion of that document not included in the Complaint. Textile's last ditch effort points to a single reference that an "issuer" can be a TSP– but this argument is also not plausible. [ECF 28 at 5]. Textile's new argument is not included in its Complaint, which does not reference or cite to the "issuer" reference and – even if it did –does not plausibly suggest that Broadway is allegedly both an "issuer" and TSP (as it is not). Indeed, the portions of the U.S. Payments Forum document relied upon by Textile in its Complaint suggest TSPs are card networks (i.e. Visa), not issuers.

Textile's Complaint is not based on allegations specific or even related to Broadway. As amplified by Textile's Opposition, the implausible allegations are based upon Broadway offering

3

admittedly non-infringing debit and/or credit cards that a cardholder (and others) may choose to use to pay via mobile wallets in connection with processing/authentication services offered by TSPs. It is the processing/authentication services offered by TSPs, not Broadway, that Textile attempts to accuse of infringement. [ECF 28 at 5-6]. Textile's Complaint lacks support for its allegations against Broadway, which should be dismissed.

## II.     Textile Has Not Alleged that Broadway Puts the Alleged Invention Into Service.

Four of the five asserted claims identified in the Complaint are system claims.[2] "[T]o use a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Systems, LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Textile's Complaint fails to allege, let alone plausibly allege, that Broadway has put any accused system into service.

Textile's citation to *Georgetown Rail Equipment Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017), misses the mark. The issue is not whether Broadway exercises "physical or direct control over each individual element of the system" (though it does not). *Id.* at 1239 (quoting *Centillion*, 631 F.3d at 1284).[3] Instead, the issue is that "[t]o use a system for purposes of infringement, a party must *put the invention into service*" – and Broadway does not do so, nor has Textile alleged as much. *Id.* (emphasis added). The party that (according to Textile) allegedly puts the invention into service is a cardholder or a merchant. [*See, e.g.*, ECF 1 at ¶¶ 24 ("a Broadway account holder requests"), 27 ("transaction specific information that was input into the

---

[2]   Claim 1 of the '079 Patent; Claim 1 of the '802 Patent; Claim 9 of the '659 Patent; and Claim 8 of the '454 Patent. Claim 3 of the '499 Patent is a method claim.

[3]   To be clear, and as discussed below, Broadway's opening Motion discusses the fact that Textile's Complaint failed to allege that Broadway "directs or controls others' performance." That portion of the opening Motion was directed to Textile's failure to allege joint infringement. [ECF 20 at 9.] Textile has not alleged joint infringement.

request by the merchant")]. Despite repeatedly arguing in its Opposition that Broadway "uses" the alleged "system" (*see, e.g.*, ECF 28 at 1, 3-7 & n.1), Textile's Complaint makes clear its position that others – not Broadway – allegedly put the system into service.

Furthermore, Textile's argument that "Broadway benefits directly from *its use* of the system" is also fundamentally flawed. [ECF 28 at 7 (emphasis added)]. The examples it provides (merchant fees for approved transactions, interest/fees from customers, "minimize fraud and data theft") are, at most, general benefits that arise from cardholders' use of the admittedly non-infringing debit and credit cards. Those so-called "benefits" arise from any debit or credit card use and are not particularized benefits associated with any use of any accused "system." And the Complaint does not allege that Broadway uses the accused "payment authorization system."

A generalized benefit from *another's use* of a non-infringing debit or credit card is insufficient (and logically incoherent) to support any assertion that Broadway itself somehow "uses" the system. *See Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (rejecting "that *Centillion* requires only that the infringer benefit from the 'system as a whole'"); *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018) ("We find [Plaintiff]'s recitation of general benefits to be equivalent to stating that [Defendant] benefits from the claimed system as a whole.").

Textile's Opposition and Complaint are devoid of any plausible support for an allegation that Broadway benefits from each and every element of and/or "uses" the accused "system."

**III. Textile Has Failed to Plausibly Allege Joint Infringement of the Asserted Method Claims Because Broadway Does Not "Direct and Control" Third Parties.**

As explained in Broadway's Motion, Textile fails to allege joint infringement. And, even when viewed in the most favorable light, any conceivable allegations of joint infringement are limited to the asserted method claim identified in the Complaint, *i.e.* Claim 3 of the '499 Patent.

5

[*See* ECF 28 at 8 ("To be liable for direct infringement, each step of a claimed method …")]. However, Textile now misleadingly argues that its Complaint alleges that Broadway "took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentality in a manner that infringes[.]" [*Id*. (citing ECF 1 at ¶ 148)]. Yet Textile's Complaint does not allege that Broadway "directs or controls others' performance" – as required for joint infringement – and, as such, is fatally deficient.[4]

Textile's argument further ignores that in each of its cited cases – namely, *IOENGINE*, *Techno View*, *Akamai*, and *Travel Sentry* – the defendant was alleged or shown to have performed at least some of the elements of the asserted claims. *See IOENGINE,* 2019 WL 330515, at *2-3 ("using [Defendant] card readers"); *Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, Case No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) ("'[S]ome of the steps' in the patented methods are performed by Defendants …"); *Akamai*, 797 F.3d at 1024 ("Limelight performs every step save the 'tagging' step."); *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1377 (Fed. Cir. 2017) (discussing third-party's performance of only "final two steps"). Here, Textile has not plausibly alleged that Broadway performs <u>any</u> of the claimed steps. Rather, it relies on an unsupported theory – that Broadway contracts third parties to provide these steps. Textile apparently alleges that a third-party service infringes the method claim (i.e., TSPs) and makes an unfounded leap to conclude that Broadway

---

[4] Textile also has not alleged a "joint enterprise" and, even if it had, it fails for the same reason that joint infringement was dismissed in *IOENGINE*: "At minimum, the complaint fails to satisfy the fourth requirement for a joint enterprise set forth by the *Akamai* court—the presence of 'an equal right to a voice in the direction of the enterprise, which gives an equal right of control.'" *IOENGINE, LLC v. PayPal Holdings, Inc.*, Case No. 18-cv-452-WCB, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) (Bryson, Cir. J., by designation) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc)).

is somehow the mastermind controlling those services. Textile propounds no factual allegations that Broadway instructs TSPs, or cardholders, regarding each step of the asserted method, let alone that Broadway directs or controls those parties.

Textile's Complaint fails to adequately allege that Broadway "directs and controls" the actions of third parties who supposedly perform claimed steps. There is no joint infringement. Nor would it be the case that a comparatively small customer bank like Broadway dictates how large TSPs, namely Visa, Mastercard, American Express, and Discover, perform their services.

### IV.     Textile Concedes that It Cannot Show Pre-Suit Knowledge of the Asserted Patents.

Textile's Opposition makes no attempt to dispute that its Complaint fails to identify any pre-suit notice to Broadway of any alleged infringement of the '499, '659, and '454 Patents, and, thus, concedes that it cannot allege pre-suit knowledge of those patents. As such, these allegations are deficient, and the Court should dismiss Textile's pre-suit indirect and willful infringement claims. *See IOENGINE*, 2019 WL 330515, at *4 (dismissing pre-suit indirect infringement claims where plaintiff did "not take issue with [defendant's] assertion that the complaint fails to allege sufficient facts"). Textile's post-filing claims also fail as discussed in Broadway's Motion. [*See* ECF 20 at 11 & n.4].[5]

As to the '079 and '802 Patents, Textile's allegation is only that Textile sent letters to Broadway "that 'described certain implementations of the patented technology' and 'specifically identified' both the 079 Patent and the 802 Patent." [ECF 28 at 10 n.4]. Textile neither appended any letters to its Complaint, nor alleged that the "implementations of the patented technology"

---

[5]   Textile's citations to cases concerning post-suit knowledge are inapposite or distinguishable. Although some courts have allowed cases to proceed based solely on knowledge obtained from the filing of the complaint, *Aguirre v. Powerchute Sports, LLC*, No. SA-10-cv-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011), came to the opposite conclusion. Despite Textile's insinuation, that case has not been overruled or superseded and remains good law.

relates to the newly-accused "payment authorization system" (as opposed to the admittedly non-infringing debit and credit cards) or Broadway's knowledge of any potential infringement. The Court has dismissed similar complaints where pre-suit notice failed to inform the defendant "that it infringed the Asserted Patents or identified [defendant's] products accused of infringement here." *BillJCo, LLC v. Apple, Inc.*, No. 6:21-CV-528-ADA, Dkt. 44 (W.D. Tex., Feb. 1, 2022).

## V.     There is No Plausible Allegation that Broadway "Instructs" Customers to Infringe.

Textile's induced infringement claims fail for one of the same reasons its direct infringement claims fail: it assumes that third party "services" infringe and, further, assumes that any reference to such "services" must attach liability to Broadway. That is not the standard.

"[G]eneralized allegations that [defendant] induced others to infringe … through its marketing and sales tactics are … insufficient." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014). Textile attempts to argue that Broadway provides "manuals and instructions" that somehow show a specific intent to induce infringement. [*See* ECF 28 at 12-13]. That argument fails. In each of Textile's cited cases (*Microsoft*, *Cywee*, and *Motiva*), the accused defendant allegedly performed only some of the claimed method steps, and the alleged inducement supplied acts not performed by the defendant. Conversely, here, and as discussed above, there is no plausible argument that Broadway provides or performs any of the accused claim elements. *Supra* at 1-5. The argument and allegation is also implausible. Textile identifies no "manuals and instructions"- only a single webpage stating: "You can use this feature with Apple Pay®, Google Pay®, and Samsung Pay®." [*E.g.*, ECF 1 at ¶ 23]. The Complaint fails to provide any basis, much less plausible facts, to support an allegation of supposed "manuals and instructions."

Broadway does not offer or sell payment processing systems that authenticate and authorize attempted payments. Such payment processing systems are provided by TSPs and

8

utilized by merchants and cardholders to take advantage of services such as Apple Pay, Google Pay, or Samsung Pay. Simply offering non-infringing debit and credit cards that cardholders may themselves elect to use in myriad ways cannot create a substantial controversy regarding inducement. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014).

## VI. Textile's Claims of Contributory Infringement Fail to Describe Any "Special" Features of Broadway's Alleged "System."

Textile's Opposition relies on allegations of "special features" (*see* ECF 28 at 14 (bullets, citing ECF 1 at ¶¶ 157, 159)) that are "merely conclusory legal assertions lacking any factual support" [*See* ECF 20 at 13]. Textile's citation to the third-party U.S. Payments Forum document, that it now describes as "exemplary," and that does not identify and is not alleged to identify Broadway, also fails to support its claim. [ECF 28 at 14 (bullet citing ECF 1 at ¶ 158)].

Textile's ambiguity as to the "Accused Instrumentality" dooms its contributory infringement claims. Textile's newly-accused "payment authorization system" lacks any plausible allegation connecting that "system" to Broadway specifically. Textile apparently bases its claim on a contention that Broadway's conventional, non-infringing debit and credit cards can be used by cardholders with services such as Apple Pay, Google Pay, or Samsung Pay in connection with systems offered by TSPs. But the Complaint utterly fails to provide any factual allegation that Broadway issues its debit and credit cards especially for such use. Rather, the non-infringing debit and credit cards are neither an "infringing apparatus [embedded] in a larger product" (ECF 28 at 15-16), nor "made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c). The conventional, non-infringing debit and credit cards offered by Broadway are simply "a staple article or commodity of commerce suitable for substantial noninfringing use." *Id.* Textile's contributory infringement allegations lack any plausible basis.

9

## VII. Textile's "Run-of-the-Mill" Willfulness Allegations Lack Any Exceptionality.

Textile's defense of its deficient willfulness allegations relies on the argument that "egregious" behavior is not an element of willfulness, but rather a requirement of enhanced damages. That form-over-substance argument ignores that Textile seeks "an award of all increased damages" and an "exceptional case" declaration. [ECF 1 at p.69-70, (c) and (e)]. Textile merely alleges that it provided some notice of the existence of two patents, nothing that hints at any egregious behavior. [ECF 28 at 19-20 (quoting ECF 1 at ¶¶ 43, 70, 95, 119, 143)]. Moreover, not every "run-of-the-mill" case in which an accused infringer does not immediately stop the accused activity upon service of a complaint is exceptional – particularly as here, where the plaintiff has failed to plausibly plead its case.[6] *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-104 (2016). Textile failed to allege willfulness, or any basis for enhanced damages.

## VIII. No Amendment Should Be Permitted, and Textile is Not Entitled to Discovery.

The deficiencies in Textile's Complaint cannot be saved by granting leave to amend because Textile's accusations are erroneously directed at Broadway. Moreover, Textile provides no justification as to why it should be allowed to "take relevant discovery prior to amendment" – it was obligated to and should have performed an appropriate pre-filing investigation before filing its Complaint. Textile's failure to adequately plead, or adequately investigate prior to filing its Complaint, neither entitles it to special treatment nor justifies burdening Broadway with fruitless and harassing discovery.

---

[6] Textile also alleges that its Complaint bends the time stream by arguing that its allegations somehow provide evidence of conduct that had not yet occurred. [*See* ECF 28 at 19-20].

Respectfully submitted this 3rd day of February, 2022.

*[signature: Michael Smith]*

Michael C. Smith
SCHEEF & STONE, LLP
113 East Austin St.
Marshall, TX  75670
Telephone: (903) 938-8900
michael.smith@solidcounsel.com

Paige Stradley (*pro hac vice*)
Rachel Zimmerman Scobie (*pro hac vice*)
Jeffrey Blake (*pro hac vice*)
MERCHANT & GOULD P.C.
150 S. Fifth Street, Suite 2200
Minneapolis, MN 55402

*Attorneys for Defendant*
*Broadway National Bank*

*Of counsel*:

David A. Roodman (*pro hac vice* motion forthcoming)
Nick E. Williamson (*pro hac vice* motion forthcoming)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
daroodman@bclplaw.com
nick.williamson@bclplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2021, a true and correct copy of the foregoing **DEFENDANT BROADWAY NATIONAL BANK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT** was filed via CM/ECF which will send notice of the filing to all counsel of record.

*/s/ Michael Smith*