# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| TEXTILE COMPUTER SYSTEMS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> BROADWAY NATIONAL BANK D/B/A BROADWAY BANK, ET AL., <br><br>     Defendants. | CIVIL ACTION NO. 6:21-cv-1050-ADA <br><br> **JURY TRIAL DEMANDED** |
| TEXTILE COMPUTER SYSTEMS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> CHARLES SCHWAB BANK, <br><br>     Defendant. | CIVIL ACTION NO. 6:21-cv-1051-ADA <br><br> **JURY TRIAL DEMANDED** |
| TEXTILE COMPUTER SYSTEMS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> COMERICA BANK, ET AL., <br><br>     Defendants. | CIVIL ACTION NO. 6:21-cv-1052-ADA <br><br> **JURY TRIAL DEMANDED** |
| TEXTILE COMPUTER SYSTEMS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> FROST BANK, <br><br>     Defendant. | CIVIL ACTION NO. 6:21-cv-1053-ADA <br><br> **JURY TRIAL DEMANDED** |

| | |
|---|---|
| TEXTILE COMPUTER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INDEPENDENT BANK, ET AL., <br><br> Defendants. | CIVIL ACTION NO. 6:21-cv-1054-ADA <br><br> **JURY TRIAL DEMANDED** |
| TEXTILE COMPUTER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOUTHSIDE BANK, ET AL., <br><br> Defendants. | CIVIL ACTION NO. 6:21-cv-1056-ADA <br><br> **JURY TRIAL DEMANDED** |
| TEXTILE COMPUTER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TEXAS CAPITAL BANK, ET AL., <br><br> Defendants. | CIVIL ACTION NO. 6:21-cv-1057-ADA <br><br> **JURY TRIAL DEMANDED** |
| TEXTILE COMPUTER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VANTAGE BANK TEXAS, ET AL., <br><br> Defendants. | CIVIL ACTION NO. 6:21-cv-1058-ADA <br><br> **JURY TRIAL DEMANDED** |

**TEXTILE'S OPPOSITION TO UNIFIED PATENTS' MOTION TO QUASH**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    UNIFIED REFUSES TO PRODUCE THE DOCUMENTS SOUGHT BY
TEXTILE'S SUBPOENAS ................................................................................... 2

III.   TEXTILE'S SUBPOENAS SEEK RELEVANT DISCOVERY ........................................ 3

     A.     Textile Did Not Waive IPR Estoppel By Failing To Plead It ................................. 3

     B.     Textile's IPR Estoppel Theory Is Not "Suspect" Because Textile Declined
To Raise RPI Issues During The IPR ..................................................................... 4

     C.     Textile's IPR Estoppel Theory Is Not "Flawed" .................................................... 5

          1.     Unified Members Are RPIs For The 079 IPR ............................................. 6

          2.     The Defendant Banks Are Privies Of The RPIs ......................................... 10

          3.     Unified's Arguments Do Not Establish Any Flaw In Textile's
Theory ..................................................................................................... 11

IV.   TEXTILE'S SUBPOENAS DO NOT IMPOSE AN UNDUE BURDEN ....................... 13

V.    UNIFIED'S CONFIDENTIALITY AND PRIVILEGE OBJECTIONS PROVIDE
NO REASON TO QUASH THE SUBPOENAS ............................................................ 15

VI.   CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Applications in Internet Time v. RPX Corp.*, 897 F.3d 1336 (Fed. Cir. 2018)........................6, 10

*Asebedo v. Kansas State University*, 559 Fed. Appx. 668 (10th Cir. 2014)................................3-4

*Broadband iTV, Inc. v. Hawaiian Telecom*,
No. 15-MC-80053 HRL, 2015 WL 1778432 (N.D. Cal. Apr. 17, 2015)......................................12

*Dropbox, Inc. v. Motion Offense, LLC*,
No. 22-MC-80083-SVK, 2022 WL 5400705 (N.D. Cal. Apr. 20, 2022)......................................12

*Fall Line Patents, LLC v. Unified Patents*, *LLC*, 818 Fed. Appx. 1014 (Fed. Cir. 2020)..............2

*Hall Data Sync. Tech. LLC v. Apple Inc.*, 2015 WL 4396349 (N.D. Cal. July 17, 2015).........5, 12

*Iancu v. Fall Line Pats., LLC*, 141 S. Ct. 2843 (2021)....................................................................2

*Power Integrations, Inc. v. Semiconductor Comp. Indus., LLC*,
926 F.3d 1306 (Fed. Cir. 2019) ................................................................................................10

*Shell Oil Co. v. U.S.,* 896 F.3d 1299 (Fed. Cir. 2018)....................................................................3

*Taylor v. Sturgell*, 533 U.S. 880 (2008) ......................................................................................10

*VirnetX, Inc. v. Apple Inc.,*
No. 14-MC-80013 RS (NC), 2014 WL 6979427 (N.D. Cal. Mar. 21, 2014) ...............................5

*WesternGeco LLC v. ION Geophysical Corp.,* 889 F.3d 1308 (Fed. Cir. 2018)....................10, 12

**Statutes, Rules, and Other Authorities**

35 U.S.C. § 315(e)(2) ....................................................................................................................1

Fed. R. Civ. P. 26(b)(1) .................................................................................................................4

157 Cong. Rec. S1376 (Mar. 8, 2011) (statement of Sen. Kyl) ...................................................10

112 Cong. Rec. S5432 (Sept. 8, 2011) (statement of Sen. Schumer)...........................................10

## I.      INTRODUCTION

Unified's entire business model is to challenge patents on behalf of others.  It was formed for the express purpose of filing IPRs on behalf of its members—and specifically of trying to avoid the IPR estoppel that would apply to its members, and their privies, if their members filed their own IPRs.  Unified fulfills this purpose by allowing members to subscribe to technological "zones" that its members select and by using its members' fees for those zones to file IPRs related to them.  Unified leverages its IPRs by agreeing to dismiss them only in return for royalty-free licenses from patent owners that protect Unified's members (and, of course, their customers' use of their products and systems).

Unified chose to file an IPR on the 079 Patent after Textile first sued several banks for infringing it.  Unified's IPR failed:  the Patent Office confirmed every challenged claim of the 079 Patent—the same claims that are now asserted in these actions—in a final written decision.

That means that IPR estoppel applies.  It applies not only to Unified, but also to the real parties in interest ("RPIs") for the 079 IPR and to privies.  *See* 35 U.S.C. § 315(e)(2).  It prevents not only Unified, but also RPIs and privies, from asserting any theory of invalidity against the 079 Patent that could have been raised in the IPR.  *See id.*

In these actions, Textile accuses the defendant banks of infringing the 079 Patent by using the payment processing systems provided by payment networks (such as MasterCard and Visa) to provide digital wallet services (such as Apple Pay, Google Pay, and Samsung Pay) to their account holders.  Apple, Samsung, and MasterCard have all been publicly disclosed as members of Unified.  Other relevant entities, such as Google and Visa, may also be members.

Textile contends that these Unified members are RPIs for the 079 IPR.  And Textile contends that the defendant banks in these actions are privies because they are the customers of

1

the RPIs.  Textile served Unified with subpoenas for documents to uncover evidence that will

prove these contentions.  Given the nature of Unified's business model, the discovery sought by

Textile is highly relevant.  And, for the same reason, the limited burden Textile's subpoenas

impose on Unified is more than fair:

> [I]t is particularly important that the [fact finder] conduct a critical
> assessment of a party's assertions regarding the real party-in-
> interest issue.  *Such a critical assessment is especially warranted
> in a case in which a petitioner's entire business model is to
> challenge patents on behalf of others.*

*Fall Line Patents, LLC v. Unified Patents*, LLC, 818 Fed. Appx. 1014, 8 n.1 (Fed. Cir. 2020)

*cert. granted, judgment vacated sub nom. Iancu v. Fall Line Pats., LLC*, 141 S. Ct. 2843 (2021)

(emphasis added).

## II.   UNIFIED REFUSES TO PRODUCE THE DOCUMENTS SOUGHT BY TEXTILE'S SUBPOENAS

Textile's subpoenas seek the following targeted categories of documents from Unified:

1.  Contracts and communications with defendant(s), American Express, Discover, Visa, Mastercard, Jack Henry, Fiserv, Apple, Google, and Samsung.

2.  Documents sufficient to identify meetings, and documents used or exchanged during meetings, with defendant(s), American Express, Discover, Visa, Mastercard, Jack Henry, Fiserv, Apple, Google, and Samsung.

3.  Documents sufficient to identify your members.

4.  Documents sufficient to identify your members who have subscribed to each of the following zones:  content, cloud, transactions, retail, mobile, cybersecurity, open source, and networking.

5.  Communications and other documents relating to Textile, Gopal Nandakumar, any patent or patent application owned by Textile or for which Mr. Nandakumar is a named inventor, or the inter partes review of U.S. Patent No. 8,505,079.

Ex. 1 [Subpoenas].

Textile served its subpoenas on September 12.  Textile granted Unified an extension of

time to respond until October 10.  In return, Unified committed that its lead counsel would meet and confer with Textile regarding any objections on October 11.  On October 10, Unified responded with fifteen pages of objections.  *See* Ex. 2 [Unified's Objections].  Unified also filed a motion to quash in the Northern District of California on October 10—before the agreed-upon meet and confer.  After letters were filed with that court, Unified withdrew its motion there. *See* Ex. 3 [10/19/22 Sandell Letter]; Ex. 4 [10/19/22 Antonelli Letter]; Ex. 5 [10/21/22 Withdrawal].

To date, Unified has not produced, or even agreed to produce, a single document.

## III.    TEXTILE'S SUBPOENAS SEEK RELEVANT DISCOVERY

Unified argues that Textile's subpoenas should be quashed because they seek "irrelevant" information.  Motion at 5.  According to Unified, Textile's subpoenas are irrelevant because (1) Textile failed to plead IPR estoppel; (2) Textile did not raise RPI issues during the IPR; and (3) Textile's IPR estoppel theory is "flawed."  None of these arguments work.

### A.    Textile Did Not Waive IPR Estoppel By Failing To Plead It

Unified first argues that Textile was required to plead IPR estoppel—as an affirmative defense to the affirmative defense of invalidity—when it answered defendants' declaratory judgment counterclaims.  Motion at 7-8.  On the strength of *Shell Oil Co. v. U.S.,* 896 F.3d 1299, 1315 (Fed. Cir. 2018), Unified says that Textile's failure to do so means that Textile waived IPR estoppel.  *Id*. at 7.  Finally, Unified concludes that it follows that the discovery sought by Textile's subpoenas is not relevant to any claim or defense in these actions.  *See id.* at 7-8.

Unified's argument is wrong at every turn.  First, Unified has no authority—or even reasoned analysis—supporting its argument that Textile was required to plead IPR estoppel as an affirmative defense in response to defendants' *affirmative defenses* of invalidity.  Textile was not required to do so.  *See, e.g., Asebedo v. Kansas State University*, 559 Fed. Appx. 668, 671-72

(10th Cir. 2014) ("Plaintiffs have no obligation to plead against affirmative defenses.").

Second, even if Textile were required to plead IPR estoppel, Textile's alleged failure to do so at this time would not mean that Textile has waived it.  Discovery opened in this case some eight weeks ago.  Since then, Textile has diligently sought discovery related to IPR estoppel.  The deadline to amend pleadings without leave in these actions is December 20, 2022.  So even if it were required, Textile still has time to plead IPR estoppel.

*Shell Oil,* the only case cited by Unified for its waiver theory, turned on the fact that the government tried to raise an affirmative defense *a decade after the case was filed*.  *Shell Oil,* 896 F.3d at 1314.  Given that timing, the Federal Circuit affirmed the Court of Federal Claim's exercise of discretion to not allow the government to file an amended complaint asserting the affirmative defense.  *See id.* at 1316.  *Shell Oil* comes nowhere near to supporting Unified's waiver theory.  To the contrary, the reason for the decision in *Shell Oil* makes clear that, given the facts here, Unified is wrong.  The Federal Circuit ruled against the government precisely because it had "ample opportunity to broaden the scope of the litigation . . . but chose not to do so."  *Id*. (cleaned up).  Here, Textile is diligently seeking discovery to take advantage of its "opportunity" to assert IPR estoppel—exactly what *Shell Oil* says Textile should be doing.

Third, Textile's subpoenas seek discovery that is relevant to a "party's claim or defense" in these actions.  The defendants pleaded anticipation and obviousness defenses to Textile's claims of patent infringement.  And they served invalidity contentions asserting prior art that could have been raised in the 079 IPR.  The discovery sought by Textile on IPR estoppel is thus directly relevant to defenses that have been pleaded.  *See* Fed. R. Civ. P. 26(b)(1).

### B.    Textile's IPR Estoppel Theory Is Not "Suspect" Because Textile Declined To Raise RPI Issues During The IPR

Unified next argues that Textile's subpoenas are irrelevant because Textile's IPR

estoppel theory is "suspect." Motion at 8 n.1.  According to Unified, the theory is "suspect" because "Textile never contested in the IPR that Unified was the sole RPI." *Id*.

It is unclear what legal significance being "suspect" is supposed to have.  Unified has not argued waiver or estoppel (or provided anything to support such an argument).  Nor has Unified pointed to anything suggesting that Textile had to challenge Unified's status as the RPI during the IPR.  So—"suspect" or not—there is no waiver or estoppel based on a failure to raise RPI issues during the IPR that prevents Textile from seeking discovery in these actions.

But, to be clear, there is nothing "suspect" about Textile's choice not to raise RPI issues during the IPR.  It was reasonable to wait to raise them until they became relevant to a concrete IPR estoppel argument in a subsequent IPR proceeding or district court action.  That is why many courts deny discovery into RPI issues during an IPR, when it is not yet clear that IPR estoppel will be at issue.  *See, e.g., VirnetX, Inc. v. Apple Inc.,* No. 14-MC-80013 RS (NC), 2014 WL 6979427, at *2 (N.D. Cal. Mar. 21, 2014) ("The Court agrees with RPX that discovery related to collateral estoppel is premature and irrelevant at this stage because the PTAB has yet to make a final decision.").  In fact, Unified itself has successfully argued that a subpoena seeking to test its claim to be the sole RPI should be quashed because it was served during the IPR.  *See, e.g., Hall Data Sync. Tech. LLC v. Apple Inc.*, 2015 WL 4396349, * 3 (N.D. Cal. July 17, 2015) (accepting Unified's argument that a subpoena for documents issued during the IPR was premature because "the estoppel provision of the AIA only becomes effective after a final decision in the *Inter Partes* review").

## C.    Textile's IPR Estoppel Theory Is Not "Flawed"

In a nutshell, Textile's IPR estoppel theory is that (1) Unified members (such as Apple, Samsung, and MasterCard) are RPIs for the 079 Patent and (2) the defendant banks are privies of

those RPIs (and thus Unified) because—at a minimum—they contract with the RPIs to use their payment processing systems—the precise instrumentalities that are accused of infringing the 079 Patent—to make Apple Pay, Google Pay, and Samsung Pay services available to their account holders.  Both parts of Textile's IPR estoppel theory are well supported by the law and the facts.  At a minimum, Textile should be allowed discovery so that it can prove its theory.

### 1.    Unified Members Are RPIs For The 079 IPR

 "Congress intended that the term 'real party in interest' have its *expansive* common law meaning."  *Applications in Internet Time v. RPX Corp.*, 897 F.3d 1336, 1351 (Fed. Cir. 2018) (emphasis added).  The RPI inquiry "demands a flexible approach that takes into account both equitable and practical considerations."  *Id*.  The focus of the inquiry is "whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner."  *Id*.

Textile has a good argument that Unified's members have a preexisting relationship with it.  They entered contracts with Unified under which they pay to subscribe to certain technology "zones."  *See, e.g.,* Ex. 6 at 31:16-32:2 [2/14/19 Jakel Depo].  In return, Unified commits "to generate a deterrence impact in the zone."  *See id*. at 35:4-16; 64:14-65:7.

Unified keeps the exact details of its contractual obligations secret.  *See, e.g., id.* at 66:23-67:10 (showing Unified's redactions).  But what has been publicly disclosed is that Unified's biggest expense is outside counsel fees—and that those are mainly for filing IPRs.  *See id*. at 26:19-27:22.  Moreover, it is publicly known that, in return for the membership fees paid for a particular zone, Unified uses the "best of its abilities to generate deterrence" for that zone—which means that it files IPRs challenging patents in the "zones" selected by its members.  *See id.* at 36:12-37:4; 38:19-39:4.  Unified itself admits that there is a direct correspondence between the fees it is paid for the zones selected by its members and the IPRs that it files for those zones:

Q:  So, is the following proposition true or false:  When Unified files an IPR for a
patent in a given zone, the money that it uses, that it spends on outside counsel
and for the filing fee for that IPR comes from members who have paid Unified
Patents' subscription fee for that zone?

A:  *Yeah, I think that is accurate.*  The membership fees for a particular zone,
fund [that] zone.  [The] [z]one uses that money to file an IPR.

*See id.* at 188:21-189:5 (emphasis added).

Unified specifically explains to its members that their ability to direct their membership

fees to particular "zones" ensures that their funds will be used for IPRs that they care about—and

that they will not be "subsidizing" other Unified members:



*See* Ex. 7 at 1, 3 [Unified FAQ].  Unified also makes avenues available to its members that allow

them to provide specific information about what patent assertions are concerning to them—and

that might be of particular interest to Unified:



*See id.; see also* Ex. 8 [Patroll Webpage] (explaining how "anyone" can submit prior art to

Unified for potential use in IPRs against certain patents specified by Unified).

Textile also has a good argument that Unified's members are clear beneficiaries of the

IPRs that it files.  They clearly benefit (and so do their customers) when Unified files IPRs:  (1) the challenged patents may be cancelled; (2) the IPR filings alone may depress the royalties that can be commanded in the market; and (3) Unified may obtain royalty-free licenses that protect its members (and their customers' use of their products).  *See, e.g.,* Ex. 6 at 100:12-102:5; 105:24-106:11; 124:13-125:23 [2/14/19 Jakel Depo].

In fact, Unified tries to convince its members to re-subscribe specifically based on the *benefit* that they deliver to them by filing IPRs.  Each year, Unified meets with each of its members and reports (1) the identity of each IPR that it filed, (2) the results of those IPRs, (3) the precise amount of its members' fees that it spent on each separate IPR that it filed; and (4) any patent licenses that it obtained.  *See id.* at 45:14-47:22; 110:22-123:21 (describing individual pitch meetings with each member).  Based on the benefit it delivered to its members, Unified sells them on re-subscribing, promising to deliver the same benefit in the new year:

> Q.  What does Unified do to try to convince its members to resubscribe, to re-up?
>
> A.  So, on an annual basis, we send our members what we talked about as the annual report.
>
> And, we have a meeting that says that this is what we did the last year as all our deterrence work; this is what we are doing in a particular zone.
>
> And as I kind of described it earlier, like, we work on behalf of the zone, *we give all of the information and we just say basically, you know, like here is what we did for the zone, if you like the work we do on behalf of the zone, then pay us again, renew, and we are going to work on behalf of the zone for another year*.
>
> So, that is, that is our pitch.

*Id*. at 109:24-110:16 (emphasis added); *see also* Ex. 9 at 87:3-90:16 [10/15/19 Jakel Depo] (testifying he meets with Samsung in Korea three times a year, "show[s] them what we did in the last year," and says that "if you like the work we do on behalf of the zone sign up again").

When Unified first started—before it had optimized its public messaging—it acknowledged exactly who benefits from the services it provides.  For example, in one of its earliest press releases, Unified boasted that "[i]n the world of fighting patent trolls, there is a new player named Unified Patents, Inc. that aims to level the playing field *for companies such as Google*, NetApp, and others."  Ex. 10 [9/23/13 Press Release] (emphasis added).  Unified also advertised that it "*tightly aligns* its deterrent solution *with its participating companies*" and that its "*collaborative* deterrent strategy" will "protect *[its] members' most important technology investments*."  *See id.* (emphasis added); *see also* Ex. 11 [Early Unified FAQ] ("Unified Patents' objective is to deter invalid NPE assertions in technology areas *companies care the most about*.") (emphasis added).  And Unified's own members plainly understood that Unified would be filing IPRs for their benefit.  *See, e.g.,* Ex. 12 at 3 [WSJ Article] ("Douglas Luftman, NetApp's chief intellectual property counsel, said in a statement that *Unified's business model represents a 'cost-effective' way to challenge 'dubious' patents*.") (emphasis added).

Over the years, Unified has developed a series of carefully worded statements—many of which are included in the self-serving declaration of its CEO and the "voluntary interrogatories" that Unified provided to the Court in support of its motion to quash—about who benefits from the IPRs that it files.  Unified now carefully sticks to its party line:  that it acts only on behalf of "zones" and not its members.  But what does that even mean?  When Unified files IPRs for the "zones" that its members select and specifically pay for, of course its members are the beneficiaries of those IPRs.  When Unified leverages its IPRs to obtain royalty-free patent licenses that protect its members it is, of course, Unified's members (and their customers) who benefit.  And when Unified specifically asks its members to pay to re-subscribe based on what it has done for them in the past—and a promise to do the same thing in the future—of course

Unified's members are the ones who are benefitting from paying Unified to be members.   No matter how many times Unified repeats the party-line, the truth remains:  Unified's members are direct beneficiaries of the IPRs that Unified files.

### 2.     The Defendant Banks Are Privies Of The RPIs

Congress intended the term "privy" in the IPR estoppel statute to have its common-law meaning.  *Power Integrations, Inc. v. Semiconductor Comp. Indus., LLC,* 926 F.3d 1306, 1315 (Fed. Cir. 2019).  "[O]ver time, the common law term 'privity' became 'used more *broadly*, as a way to express the conclusion that nonparty preclusion is appropriate on any ground."  *Id*. (quoting *Taylor v. Sturgell*, 533 U.S. 880, 893 (2008)) (emphasis added).  The term "privity" has acquired an "*expanded* meaning" that focuses on the "practical situation."  *Id*. (emphasis added).  Determining whether a party is a "privy" is "a highly fact-dependent question."  *WesternGeco LLC v. ION Geophysical Corp.,* 889 F.3d 1308, 1318–19 (Fed. Cir. 2018).

As the Federal Circuit has explained, Congress chose language that applies "where proxies or privies would *benefit* from an instituted IPR, even where the petitioning party might separately have its own interest in initiating an IPR."  *Applications in Internet Time, LLC v. RPX Corp.,* 897 F.3d 1336, 1347 (Fed. Cir. 2018) (emphasis added).  It "should extend to parties to transactions and other activities *relating to the property in question*."  157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) (emphasis added).  It should also extend to "a party that has a direct relationship to the petitioner with respect to the allegedly infringing product or service."  112 Cong. Rec. S5432 (Sept. 8, 2011) (statement of Sen. Schumer).  In other words, "it effectively means customers of the petitioner."  *Id*.

Textile has a good argument that the defendant banks are privies of the RPIs (and thus of Unified).  Textile accuses the defendant banks of infringing the 079 Patent by using the payment

processing systems of Unified RPIs (such as MasterCard) to provide the digital wallet services (such as Apple Pay and Samsung Pay) of Unified RPIs (such as Apple and Samsung).  So the transactions and activities of the defendant banks "relate to the property in question" and the defendant banks have "a direct relationship" with the RPIs (and thus Unified) "with respect to the allegedly infringing product or service."  They are, in effect, "customers" of the RPIs.  And the defendant banks stood to benefit from the 079 IPR, since they would benefit if the IPR resulted in the cancellation of the 079 Patent, as well as from Unified's attempts to leverage the IPR filing to obtain a royalty-free license that protects Unified members (and their customers' use of their systems).  Given these facts, the defendant banks qualify as "privies" and are subject to IPR estoppel to the same extent as the RPIs and Unified.

### 3. Unified's Arguments Do Not Establish Any Flaw In Textile's Theory

Unified argues that Textile's IPR estoppel theory is "legally deficient on its face"—that the defendant banks cannot be "privies" of Unified—because Unified has no direct relationship with them.  Motion at 1.  Unified criticizes Textile's IPR estoppel theory as an "unpled, unexplained, and seemingly dubious" theory of "estoppel by proxy of third party."  Motion at 6.

Unified's criticism cannot be right.  Just think what it would mean:  any party could insulate its privies from IPR estoppel by having a proxy file its IPR.  Yes, that party would itself still be considered an RPI for purposes of IPR estoppel.  But its privies would not be subject to IPR estoppel because they would have no direct relationship with its proxy.  IPR estoppel cannot be avoided by so simple a stratagem.  Because the defendant banks are privies of certain Unified members (such as Apple, Google, and MasterCard), and because those Unified members are RPIs for the 079 IPR (which means, effectively, that those members were the petitioners for that IPR), the defendant banks are also privies of Unified and thus subject to IPR estoppel.

Unified also argues that the defendant banks cannot be privies because they were sued years after the 079 IPR. *See* Motion at 9-10. Unified says that means that they lacked control of the IPRs, which in turn means they cannot possibly be privies. *See id.* That argument does not work either. First, the timing of these actions is irrelevant. There is no requirement that the district court actions be co-pending with the IPR. Indeed, IPR estoppel applies only after an IPR concludes with a final written decision. Second, while "control" is one factor among many that can be considered in determining whether two parties are privies, it is not required. Unified's citation to *Western Geco*, *see* Motion at 9, does not help it on this point. *See WesternGeco LLC v. ION Geophysical Corp.,* 889 F.3d 1308, 1319 (Fed. Cir. 2018) (identifying "control" as only one item on a "non-exhaustive list" where "nonparty preclusion would be justified").

Finally, Unified argues that "*multiple* courts have quashed similar subpoenas" in the circumstances here. Motion at 15 (emphasis added). But Unified's cases are all from a *single* court, the Northern District of California. And none involve the circumstances here. None were based on a final written decision that gave rise to an IPR estoppel that applies in a subsequent district court action. In *Hall*, the court granted a motion to quash because the PTAB had not even instituted the IPR, much less issued a final written decision. *See Hall Data Sync. Tech. LLC v. Apple Inc.*, 2015 WL 4396349, * 3 (N.D. Cal. July 17, 2015). In *Broadband*, the court quashed a subpoena because the PTAB had *denied institution*. *See Broadband iTV, Inc. v. Hawaiian Telecom*, No. 15-MC-80053 HRL, 2015 WL 1778432, at *1 (N.D. Cal. Apr. 17, 2015). And in *Dropbox*, the court quashed a subpoena based on its rejection of relevancy theories unrelated to IPR estoppel. *See Dropbox, Inc. v. Motion Offense, LLC*, No. 22-MC-80083-SVK, 2022 WL 5400705, at *2–3 (N.D. Cal. Apr. 20, 2022). Unified has no authority supporting the relief that it seeks from this Court.

## IV.    TEXTILE'S SUBPOENAS DO NOT IMPOSE AN UNDUE BURDEN

Unified argues that Textile's subpoenas are unduly burdensome for multiple bad reasons.

Unified says that it will take "dozens of hours" to search for and produce the requested documents—which may amount to "hundreds" (or maybe even "thousands") of pages.  Motion at 5-6.  But Unified has probably already spent "dozens of hours"—and a lot of money on expensive lawyers—fighting Textile's subpoenas (including in an ill-conceived, now-withdrawn action in the Northern District of California that it should have never filed in the first place).  Given the relevance of the discovery sought by Textile, spending "dozens of hours" to produce "hundreds" (or even "thousands") of pages of documents is not an undue burden.

But it should not really take that long.  Unified has already said that the defendant banks are not members and that it has no contracts, meetings, or communication with them (other than, perhaps, a series of emails that is sends out to a massive listserv generally reporting on its activities—which, of course, will be incredibly easy to collect and produce and requires no privilege review).  Contracts, communications, and documents about meetings will thus have to be turned over only for, at most, American Express, Discover, Visa, Mastercard, Jack Henry, Fiserv, Apple, Google, and Samsung.  Moreover, since these contracts, communications, and meetings are with third parties for which Unified disclaims any possible community of interest, there is no need for a privilege review.

Unified can also easily turn over its member lists, including its member lists for each particular "zone," and there is nothing privileged about them.  That should take *minutes*.

All that leaves are any non-privileged documents relating specifically to Textile, Textile's patents, Textile's inventor, and the 079 IPR that Unified filed.  If Unified has any non-privileged documents responsive to this last category (such as communications with third parties about

filing the IPR or the prior art that Unified should assert), the obvious relevance of those documents more than justifies the limited burden of collecting and producing them.

Unified also objects that the documents sought by Textile are not limited in time.  But Unified has said nothing about why time limitations would make its collection and production of documents unduly burdensome.  It would not be meaningfully harder, for example, for Unified to collect all its contracts with Samsung, rather than just its contracts from when it first started working on the 079 IPR through the final written decision.  Indeed, it would  take much more time—and it would be much more expensive—to analyze its contracts to determine which ones have operative provisions that apply for any particular time frame.

Nor is relevance limited by any particular time frame.  As described above, *see supra* at 9-10, Unified was more forthright about the true nature of its business and its relationship with its members when it first began.  So earlier documents are highly relevant.  And so are more recent documents:  if, for example, Unified sent Samsung a smoking-gun email the day after the final written decision admitting that it was acting on Samsung's behalf, surely that email should be turned over.  Neither burden nor relevance considerations warrant any time limitations.

Unified also argues that Textile's subpoenas "should be quashed because they demand production of information available from defendants or [other] non-parties . . . ."  Motion at 10.  But, again, Unified has already said that there are no contracts, communications, or meetings with the defendant banks since they are not Unified members.  That leaves only the other third parties (such as Apple, Google, Samsung, Visa, and MasterCard) from whom Unified says Textile should obtain its discovery.  But to the extent relevant documents are in the possession of both Unified and its members, it is much more efficient, and less burdensome to everyone, to obtain it directly from Unified, rather than separately from multiple Unified members who are

also third parties. In fact, in response to Textile's subpoenas to them, Unified's members objected that Textile should seek the discovery from Unified! That is just what Textile is doing.

## V. UNIFIED'S CONFIDENTIALITY AND PRIVILEGE OBJECTIONS PROVIDE NO REASON TO QUASH THE SUBPOENAS

Unified's confidentiality objections are bogus. Unified itself prominently identifies many of its members on its website. *See* Ex. 13 [Unified Member Webpage]. Moreover, after years of protracted litigation before the PTAB about the supposed "highly confidential" fact that Samsung was a member, Unified abandoned that claim before it was about to be rejected by the Federal Circuit. *See* Ex. 14 at 5 [Unified CAFC Brief]. Unified cannot articulate any reason why its members lists are highly confidential. Even if it could, this Court's protective order—an order under which both parties and third parties must disclose "crown jewel" trade-secrets—is more than adequate to protect the sanctity of Unified's member list.

Nor do Unified's privilege objections provide any reason to quash Textile's subpoenas. Unified can asset any applicable privilege. It can even do so in a bulk manner, without having to separately log each communication as an individual entry, so long as it identifies everyone involved in the communications for which it claims privilege. The mere fact that Unified will have to assert its privilege objections is no reason to quash Textile's subpoenas.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny Unified's motion to quash and should instead order Unified to comply with the subpoenas within one week.

Dated: October 27, 2022                 Respectfully submitted,

                                        */s/ Matthew J. Antonelli*
                                        Matthew J. Antonelli
                                        Texas Bar No. 24068432
                                        matt@ahtlawfirm.com
                                        Zachariah S. Harrington

Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
815 South Broadway Avenue
Tyler, Texas 75701
(903) 593-7000

*Attorneys for Textile Computer Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on October 27, 2022.

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli