# EXHIBIT 12

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

http://www.wsj.com/articles/SB10001424127887323820304578408790085259404

LAW

# New Venture Enters Patent Fray

San Francisco Startup Plans to Recruit Companies to Deter Legal Threats Against Its Members

By DON CLARK

Updated April 7, 2013 8:44 p.m. ET

Firms that buy and enforce patents make life hard for technology companies. A new San Francisco startup hopes to turn the tables.

Unified Patents Inc. plans to recruit companies for a collective effort to deter patent lawsuits or legal threats against its members.

The first to join Unified are Internet giant Google Inc. and NetApp Inc., which makes data-storage hardware. But the venture plans to set itself apart by also recruiting small tech companies, which often have trouble defending themselves.

"What we end up doing is making a group of small companies no longer look like an easy target," said Kevin Jakel, Unified's chief executive.

Unified's plan is one of many responses to the rise of companies that specialize in making money from patents, often while doing little in the way of invention or selling products. That distinction is important because such companies—often called NPEs, for "nonpracticing entities," or, more derisively, "patent trolls"—don't operate businesses that can be countersued, a common patent defense.

PatentFreedom, an organization that tracks such firms, said the number of operating companies named in lawsuits involving NPEs more than tripled between 2008 and 2012, even after adjusting to exclude a recent surge in suits caused by a change in U.S. patent laws.

Firms such as RPX Corp. and Allied Security Trust, or AST, were formed in recent years to help patent defendants, largely by buying up patents to keep them out of the hands of

Fall Line Patents, LLC
Unified Patents Inc. v. Fall Line Patents, LLC
IPR2018-00043
Ex 2005-001

Appx4698



NPEs. But the amount of litigation keeps rising, Mr. Jakel said, with small companies increasingly bearing the brunt of the lawsuits.

Colleen Chien, an assistant professor at Santa Clara University Law School, estimates that companies with $10 million or less in revenue account for 55% of the defendants targeted by entities that specialize in asserting patents.

Such plaintiffs use a variety of techniques to make it more economical to assert patents, she said. In some cases, firms send letters threatening patent suits to many small companies at once in the hopes that a sizable number will pay for licenses rather than taking the risks of fighting patent cases in court. Money earned from that practice can help fund further attacks on small or large companies.

Unified plans to use a variety of techniques to make such tactics more expensive and more risky. The firm was founded by Mr. Jakel, who previously served as head of intellectual property litigation at Intuit Inc., and Brian Hinman, a former chief executive of AST who most recently served as a vice president at InterDigital Communications Inc.

Fall Line Patents, LLC
Unified Patents Inc. v. Fall Line Patents, LLC
IPR2018-00043
Ex 2005-002

One key strategy is defining specific technology fields to defend, making it easier to identify and track a limited number of relevant patents. Unified intends to start with two such "micro-pools." One focuses on technologies for managing payments on mobile devices, and the other focuses on Web-powered services known as "cloud storage."

In another approach, Unified plans to use small-company members as a kind of early warning system—both when NPEs approach them about potentially purchasing their patents and when they are threatened with litigation by the NPEs.

Once alerted, Unified will be able to spread the word to other members and pursue countermoves, such as offering to buy the small-company patents itself, Messrs. Jakel and Hinman said. They also expect to ask the U.S. Patent and Trademark Office to re-examine the patents wielded by the NPEs, increasing the risk that they will be declared invalid.

While defendants frequently use the latter tactic after they are sued, starting the process earlier can raise the costs for NPEs and make enforcing particular patents less attractive, Mr. Jakel said.

But Paul Ryan, CEO of Acacia Research Corp., one of the best-known firms that buys and licenses patents, said re-examinations aren't a decisive defense if the patents involved are valid. "We are very selective," Mr. Ryan said of the patents Acacia buys. "We reject a lot of patents for various reasons."

Unified isn't disclosing how much it will charge members, but it plans to bill large companies higher fees than smaller ones. ==Douglas Luftman, NetApp's chief intellectual property counsel, said in a statement that Unified's business model represents a "cost-effective" way to challenge "dubious" patents.==

The venture also is likely to face competition from RPX, AST and others. But Daniel McCurdy, AST's chief executive, thinks the efforts to help defendants may be complementary. "The more the merrier," he said.

### Corrections & Amplifications
Unified Patents Inc. was incorrectly referred to as United in second references in some editions of this article.

**Write to** Don Clark at don.clark@wsj.com

Fall Line Patents, LLC
Unified Patents Inc. v. Fall Line Patents, LLC
IPR2018-00043
Ex 2005-003